HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR AMERICAN MARINE BANK,<br><br>Plaintiff,<br><br>v.<br><br>REX TOWNSEND, BARBARA KAYE, RENZO LUCIONI, GARY WINTER, BESS ALPAUGH, JEFFREY GOLLER, THOMAS KILBANE, ANDREW MUELLER, and ALICE TAWRESEY,<br><br>Defendant. | CASE NO. 3:13-cv-05055-RBL<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Dkt. no. 62 |

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Dkt. no. 62]. In its capacity as Receiver for American Marine Bank, the Federal Deposit Insurance Corporation (FDIC-R) brought this action against defendants nine directors and officers of American Marine Bank[1] claiming they were negligent, grossly negligent, and breached their fiduciary duties in the Bank's lending practices. FDIC-R alleges that the defendants

---

[1] After filing, FDIC-R decided not to pursue its claim against decedent Carl Berg's estate.

1 | disregarded regulator criticisms of the Bank's lending activities and approved eight[2] loans that
2 | violated the Bank's internal policies and reasonable industry standards. Each loan failed, and so
3 | did the Bank. Stepping into the shoes of the Bank, FDIC-R seeks damages for the money lost as
4 | a result of the loans' failure to repay.

5 | Defendants seek dismissal as a matter of law, arguing that the loans and the Bank instead
6 | failed due to the economic crash of 2008 and that the business judgment rule insulates their
7 | allegedly reasonable decision-making from review. Defendants argue that FDIC-R can provide
8 | no evidence that their allegedly poor judgment in approving the loans proximately caused the
9 | Bank's losses. They also claim that they reasonably relied on the financial information loan
10 | officers and third parties provided to them, so the Court should not second guess the value of
11 | their decision-making under the business judgment rule.

12 | The Court considers whether evidence permitting a jury to find that the Bank's losses
13 | were caused by the defendants' loan determinations, rather than the economic climate, exists.

## I. INTRODUCTION

15 | The Bank opened its headquarters on Bainbridge Island, Washington in 1948. Under
16 | Bank President and Chief Executive Officer Mr. Rex Townsend's management, the Bank
17 | implemented a growth strategy beginning in 2004. The Bank began opening new branches and
18 | investing in loan participations outside its original purview. From 2005 to 2007, the Bank's

---

[2] FDIC-R elected not to pursue claims on three of the eleven loans originally addressed in its filings.

defendant directors[3] and officers[4] approved the eight loans at issue[5]. The Great Recession struck in December 2007. The loans all subsequently failed.

The defendants and FDIC-R disagree as to whether the defendants followed reasonable procedures when approving these failed loans. The defendants contend that they complied with the Bank's internal policies, properly relying upon the documentation that loan officers and third parties provided to them. In support of its argument, the Bank argues that post-approval reviews

---

[3] Defendants Bess Alpaugh, Carl Berg, Jeffrey Goller, Thomas Kilbane, Andrew Mueller, and Alice Tawresey served as the Bank's directors during this time.

[4] Defendants Townsend, Barbara Kaye, Renzo Lucioni, and Gary Winter served as the Bank's officers during this time.

[5]     (1) The Bank's Directors Loan Committee approved the "Midtown Joint Ventures" participation loan for the development of commercial and residential space in Orem, Utah in May 2005.
    (2) The Bank's Senior Loan Committee approved the "River Canyon" participation loan for the construction of a residential land development in Denver, Colorado in January 2006.
    (3) In June 2006, the Board of Directors approved the "Pacifica" loan, an additional advance on a $1.95 million loan to Pacific Construction, for completion of a luxury home on Bainbridge Island, Washington. Bank director Dave Berry owned Pacifica Construction, making this an insider loan.
    (4) The Senior Loan Committee approved the "Western PA" participation loan, which was used for the purchase of three mortgages secured by two nursing home facilities, in December 2006.
    (5) The Bank's Internal Loan Committee approved the "Spanaway 19" in June 2007. The loan was a line of credit serving as the operating capital for the borrower's commercial real estate ventures.
    (6) The "Quincy Street" loan was for the refinancing of existing debt owed to the Bank to be used for development purposes in Port Townsend, Washington. The Board of Directors approved this loan for in August 2007.
    (7) The Bank's Officers' Credit Committee approved the "Campus Crest" participation loan in October 2007 for the acquisition of land and residential development in Federal Way, Washington. At the time of the loan, the project was coming out of chapter 11 bankruptcy.
    (8) The Senior Loan Committee approved "Robert & Brenda's," two loans given to tenants in common, in December 2007. The loans provided the borrowers funding for the development of a retail center in Spokane, Washington.

1  of the loans by Loan Review Services, Moss Adams, FDIC, and the Washington Department of

2  Financial Institutions, as well as stress tests performed by Banc Investment Group, were positive.

3        Alternatively, FDIC-R alleges that Townsend created an atmosphere of hostility,

4  inhibiting loan officers from challenging his decisions to present loans to the Bank's approval

5  committees or to push loans through himself, and that the defendants were aware of the affects of

6  his intimidation. FDIC-R argues that the defendants consequently approved loan transactions—

7  including an insider loan—based on inadequate financial information, with inadequate appraisals,

8  and exhibiting underwriting deficiencies. FDIC-R argues that the defendants also agreed to

9  purchase participation loans for which the Bank had failed to perform its own credit analyses or

10 underwriting.

11       FDIC-R challenges the defendants' position that post-approval loan reviews and stress

12 tests indicate the defendants' acted reasonably. FDIC-R instead argues post-approval reviews and

13 stress tests evidence how a loan is performing at the time of review, not whether the processes

14 for approving the loans were proper. However, FDIC-R argues its reviews warned defendants of

15 their critically deficient oversight and managerial ineptitude and of the Bank's exposure to

16 deteriorating real estate markets.

17       **II.   DISCUSSION**

18       FDIC-R alleges that the officer defendants acted negligently under RCW 23B.08.420,

19 that the officer and director defendants acted with gross negligence under the Financial

20 Institutions, Reform, Recovery and Enforcement Act of 1989 (FIRREA), and that the officer and

21 director defendants breached their fiduciary duties. FDIC-R argues that by approving loans that

22 did not so warrant and by approving loans in violation of the Bank's internal policies, the

23 defendants caused the Bank to lose millions of dollars.

24

The defendants counter that FDIC-R cannot prove the defendants' alleged poor judgment proximately caused the Bank's monetary losses, because even properly approved loans might fail. They also argue that they properly followed the Bank's processes for loan evaluation and approval, and so complied with the requirements of the business judgment rule.[6]

### A. Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50, 106 S. Ct. 2505 (1986); *see also Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *See Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing no evidence exists that supports an element essential to the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). Once the movant has met this burden, the nonmoving party then must show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

---

[6] The Court DENIES the parties' motions to strike and exclude evidence for the purposes of this order. The Court will reconsider any arguments raised in the parties' motions in limine.

### B. The Proximate Cause of the Bank's Losses is a Material Issue of Fact for All Three Claims.

The defendants seek summary judgment, alleging FDIC-R can provide no evidence that the defendants' actions proximately caused the Bank's losses. FDIC-R argues that the defendants' poor judgment in approving the loans, and not the 2008 economic downturn, proximately caused the loans' failure.

The defendants allegedly approved the loans despite facially insufficient underwriting and poor creditworthiness. If true, the defendants could not have approved these loans in accordance with the Bank's internal policies in any economic climate. But for the defendants' negligent attitude towards the atmosphere created by Townsend and towards the Bank's noncompliance with its lending policies, the loans allegedly never would have been approved, and the Bank would not have lost millions of dollars.

### C. Material Issues of Fact Surround the Defendants' Business Judgment Rule Defense to FDIC's Claims of Ordinary Negligence.

Although not well developed in Washington, the business judgment rule constrains officer and director liability for ordinary negligence. Under it, courts generally refuse to substitute their judgment for that of the officers and directors. *See Scott v. Trans-Sys., Inc.*, 148 Wn. 2d 701, 709, 64 P.3d 1 (2003) (en banc) (quoting *Nursing Home Bldg. Corp. v. DeHart*, 13 Wn. App. 489, 498 (1975)).

The parties disagree on the standard this defense requires and the interplay between the rule and Washington statutory law. The defendants assert that the business judgment rule only requires good faith compliance with the process by which a decision is made and that the Court need only reach this determination after an officer or director's compliance has not been shown.

FDIC-R argues that the business judgment rule requires both good faith and reasonableness and that Washington law codifies the business judgment rule.

First, the business judgment rule in Washington immunizes directors and officers acting with good faith and reasonable care. *See FDIC v. Sheehan*, 2013 U.S. Dist. LEXIS 176454, *4-8 (W.D. Wash. Sept. 14, 2013); *see also Scott*, 148 Wn. 2d at 714 (announcing in dicta that the defendants bore the burden of demonstrating that they acted in good faith and that their decisions constituted reasonable business judgments). Courts will determine good faith exists when "(1) the decision to undertake the transaction [was] within the power of the corporation and the authority of management, and (2). a reasonable basis [exists] to indicate that the transaction was made in good faith." *Scott*, 148 Wn. 2d at 709. Reasonableness requires "a director [to] also act with such care as a reasonably prudent person in a like position would use under similar circumstances." *Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997) (en banc); *see also Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 834, 786 P.2d 285 (Wn. Ct. App. 1990) ("The business judgment rule does not appear to protect a defendant's conduct in Washington if the defendant did not exercise proper care, skill, and diligence.").

FDIC-R has set forth facts showing there is a genuine dispute as to whether the defendants acted with good faith and reasonableness. FDIC-R has shown the defendants may not have acted with good faith reliance, considering the lack of financial information provided to them and especially if they knew of the atmosphere of timidity allegedly created by Townsend. FDIC-R has also demonstrated a potentiality that the defendants unreasonably approved loans in violation of the Bank's internal processes and in lending areas where they lacked sufficient knowledge to make informed decisions.

1  Second, the Court need not determine at this juncture whether the business judgment rule
2  is properly applied concurrently with or after Washington law because in either case, FDIC-R
3  has provided genuine disputes of material fact as to whether the defendants complied with
4  Washington law.

5  Even when employing the defendants' construction of the business judgment rule, genuine
6  issues of material fact exist as to whether the processes they relied upon when making their loan
7  determinations were proper. FDIC-R has set forth facts suggesting the defendants ignored an
8  allegedly hostile work environment, knowingly relying on inadequate and incomplete financial
9  information. Therefore, the business judgment rule cannot at this time insulate the defendants
10 from a review of the reasonableness of their business decisions.

### III.    CONCLUSION

The proximate cause of the Bank's losses is a material issue of fact, as is defendants' compliance with the business judgment rule. Accordingly, the Court DENIES Defendants' Motion for Summary Judgment [Dkt. no. 62].

**IT IS SO ORDERED.**

Dated this 30th day of September, 2015.

Ronald B. Leighton
United States District Judge